CHASEZ, Judge.
Plaintiff-appellant, Stephen Kapelow, owned several separate apartment complexes known as Lynne I, Lynne II, Terry I, Terry II and Terry III, all located in Jefferson Parish. In January of 1967 he sold the properties to defendant-appellee, William Abroms. The names of the complexes were changed to the following: Lynne I became Lafayette Square, Lynne II became Brynmar Square, Terry I became Beauregard and Philippe Square, Terry II became Louisburg I and Terry III became Louis-burg II. In this opinion the properties will be referred to by the newer names.
The transaction was originally between these two parties but Abroms requested that three various complexes be transferred to nominee corporations controlled by him, namely Empire Properties Corporation and City Properties Corporation. The former became owner of Lafayette Square and Brynmar Square and the latter became owner of Beauregard and Philippe Square.
The consideration for the sales was in the form of an assumption of the first mortgages held by insurance companies as well as a second mortgage in favor of Kap-elow for his equity value in the property. Neither the first mortgages nor the sale and second mortgages carried any personal responsibility to Abroms, only the properties' were involved.
Some fifteen months thereafter Kapelow became concerned with, allegedly improper management of the property and feared that because of the mismanagement the Insurance Companies would perhaps foreclose on the first mortgages which would jeopardize the second mortgages which he held and he would, thus, lose his equity in the properties.
In order to guard his equity he required of Abroms a separate personal guarantee against any loss that might occur during the Abroms group’s ownership should the properties be returned to Kapelow. The agreement confirmed to Kapelow is in letter form, dated April 9, 1968 and reads as follows:
“April 9, 1968
Mr. Stephen B. Kapelow 101 Apple Tree Lane • Gretna, Louisiana
Re: — Lafayette Square (Lynne I), Empire Properties Corp., Owner.
—Brynmar Square (Lynne II), Empire Properties Corp., Owner.
—Beauregard & Philippe Square (Terry I), City Properties Corp., Owner.
Louisburg I (Terry II) (William Abroms-50%

Louisburg II (Terry III) (Cle-dith S. ArmeL-50%

“Dear Stephen:
“This will confirm my agreement to the effect that if the above properties are ever returned to you in whole or in part, either voluntarily or involuntarily, by any or all of the above owners, then and in that event all the bills and costs incurred (during such time that the properties are under the control of said owners, or their transferees who have been *749 approved by you) will be paid, with respect to each property, including all operating expenses, pro-rata taxes, pro-rata insurance premiums, and pro-rata monthly mortgage payments. Rentals will be pro-rated to the date of reassignment and all tenant deposits will be escrowed for your return to the tenants, to the extent such tenants may be entitled to them. (Emphasis ours).
“Although I consider the above to be the obligation of each owner in the event of reassignment to you as stated, nevertheless, I give you my personal guarantee behind each owner’s obligation.
“My guarantee runs to you personally and may not be transferred or assigned to others; and this guarantee does not run in favor of any third party, nor to you should you acquire from an intermediate third party at a later date, or if you no longer hold the second mortgages on said properties.”
Appearing above Abroms’ signature in what appears to be his handwriting is the following notation:
“Nothing contained herein shall be considered as a guarantee of the First and Second Mortgage debt. The guarantee is an open account obligation as described hereinabove, and it does not apply to any accelerated payments under the First or Second mortgages.”
Matters did not proceed smoothly and Kapelow instituted foreclosure proceedings on the properties in order to protect his second mortgages and to have the properties returned to him. However, on January 28, 1969 Kapelow and Abroms, along with one Cledith Smith Armel, who owned Louisburg I and Louisburg II jointly with Abroms, entered into a compromise agreement. In this agreement Kapelow agreed to drop certain suits, including the foreclosure, if Abroms and Armel would return the property to him. This was done and Kapelow released Abroms from the terms of the guarantee, at least with respect to the two Louisburg properties. The compromise agreement contained the following language:
“Kapelow does further agree that in consideration of the aforesaid premises, he does hereby release, relieve and forever discharge Abroms of any and all rights which Kapelow has under the terms of the aforesaid agreement [of April 9, 1968] only insofar as it relates to Louisburg I and Louisburg II, especially reserving such rights that he, Kap-elow, has or may have against Abroms under the terms of the aforesaid guarantee as it relates to the properties now known as Lafayette, Brynmar, Beauregard, and Philippe Squares.”
In February of 1969, for the same reasons, Kapelow and Empire Properties Corporation, American Empire Life Corporation, City Properties Corporation and First Southeast Corporation entered into a similar compromise agreement. In return for the properties named Lafayette Square, Brynmar Square, Beauregard and Philippe Square and $12,000 representing a portion of tenant security deposits, Kapelow released the Corporations but reserved his rights against Abroms under the April 9, 1968 agreement. The pertinent language reads as follows:
“* * * is hereby acknowledged by the said Kapelow, in full settlement of any and all claims, demands, cause of action or actions which the said Kapelow has or may have against either City, Empire, American Empire, First Southeast, or any of their officers or directors, with the express reservation that the said aforesaid release shall not affect that certain personal guarantee furnished to Kapelow by one, William Abroms, dated April 9, 1968, and with this release, the said parties declare themselves satisfied.”
Other language manifesting an intention not to release Abroms on the personal *750 guarantee appear in the agreement as follows :
“* * * the parties hereto have agreed to settle and compromise their differences * * * subject to the express reservation that the aforesaid release and compromise shall not affect that certain personal guarantee furnished to Kapelow by one William Abroms dated April 9, 1968.”
When the properties were returned to Kapelow, according to his petition, he expended large sums of money in the form of repairs, paying past due first and second mortgage installments and for other items which he considered to be covered by the personal guarantee given to him by Abroms.
Kapelow filed suit against Abroms on July 9, 1969 basing his claim on the guarantee of April 9, 1968. The suit included claims on the Louisburg I and Louisburg II properties, even though Abroms had been released from any obligation with respect to these two properties by the compromise agreement of January 28, 1969. He also made claims on the other properties, Lafayette Square, Brynmar Square and Beauregard and Philippe Square, although he had released the Corporate owners from any obligations by the compromise agreement of February, 1969.
The suit was met by Motion for Summary Judgment filed by defendants on October 6, 1969, which contended that since Abroms was released from the obligations of his guarantee agreement with respect to the two Louisburg properties, he could not now be sued on that agreement with respect to those two properties. It further contended that Abroms,. by his agreement, was a surety for the corporations which owned the other properties and, since the principal debtors, the corporations, were released by the compromise agreement of February, 1969, then Abroms, the surety, was likewise released under the basic sure-tyship principal that if the principal debtor is released, then the surety as an accessory debtor also is released; this even in spite of Kapelow’s reservation of his rights against Abroms.
On October 30, the lower Court granted the Motion for Summary Judgment. A new trial was granted, limited to reargument. On November 19, 1969 the judgment granting the Motion for Summary Judgment was recalled and set aside. On November 26, 1969 defendant filed a Supplemental Motion for Summary Judgment.
On April 10, 1970 the Court granted the Motion for Summary Judgment filed as of October 6, 1970. Plaintiff prosecuted this appeal.
It seems clear that the Summary Judgment with respect to the Louisburg I and Louisburg II properties is correct since Abroms was released under his personal guarantee in the compromise agreement of January 28, 1969. Furthermore, counsel for plaintiff conceded this point in oral argument before this Court.
With regard to the other properties, Lafayette, Brynmar, Beauregard and Philippe Squares, the question is more serious.
The trial court felt that there were no issues of fact and granted the Summary Judgment. He felt that Abroms had guaranteed the owner’s obligations and was thus a surety. It followed then that releasing the principal obligor released the surety.
However, plaintiff argues that although Abroms guaranteed the owners’ obligations these were obligations outside the scope of mortgages and that the release entered into between the parties released only the amount due on the mortgage debt.
The portion of the compromise agreement determinative of the question is the following:
“NOW THEREFORE, in consideration of the premises aforesaid, City and Empire agree to transfer to Kapelow *751 contemporaneously with the execution hereof, a dation en paiement on the said apartment complexes known as Lafayette Square, Brynmar Square, Beauregard and Philippe Square, in which said dation en paiement the said Kapelow will fully release, relieve and discharge the vendors therein of any and all obligation under the said promissory notes foreclosed upon, with the express reservation that nothing herein shall reduce, modify, cancel or otherwise affect the liability of one William Abroms to the said Kape-low under the personal guarantee dated April 9, 1968.” (Emphasis added)
The only obligations released were the promissory notes and mortgages securing them. Whether the “bills and costs incurred * * * including operating expenses, pro-rata taxes, pro-rata insurance premiums, pro-rata monthly mortgage payments, rentals and * * * tenant deposits” were included in the mortgages and notes, was not made a part of the record. It is entirely possible that the Corporations might yet be liable to Kapelow for these various expenses if they were not included in the release. In any event, it seems that Abroms could be liable if the Corporations were not because if the Corporations were not released of these expenses, then Abroms would not be released even under the theory used by the trial judge. If the Corporations were never liable for all these expenses, then a release of the Corporations would certainly in no way affect Abroms’ guarantee to Kapelow. Moreover, Abroms guaranteed “All the bills and costs incurred * * * will be paid- with respect to each property, including all operating expenses, pro-rata taxes * * * There may be expenses completely outside the mortgage obligations which are not enumerated in the agreement of April 9, 1968 and for which Abroms would now be responsible because the items guaranteed do not form an exclusive list. The language indicates that all bills including those reported, but not related to those listed, will be paid by Abroms.
We, therefore, conclude that issues of fact do exist between the parties and therefore the Summary Judgment was improperly granted, at least with regard to the properties known as Lafayette, Bryn-mar, Beauregard and Philippe Squares.
For the assigned reasons, the judgment in favor of defendant Abroms granting the Summary Judgment dismissing the suit filed by the plaintiff, Stephen B. Kapelow, is affirmed with respect to the properties known as Louisburg I and Louisburg II. That portion of the Summary Judgment dismissing plaintiff’s suit with respect to the properties known as Lafayette, Bryn-mar, Beauregard, and Philippe Squares is annulled and set aside and the matter is remanded to the trial court for further proceedings in accordance with law. A payment of costs is deferred herein until final disposition of the suit.
Affirmed in part, annulled and set aside in part and remanded.